IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Deborah L. Maddox, ) | |
| ) | Civil Action No. 8:05-3259-HFF-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Deborah L. Maddox, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 50 years old on the alleged onset date of disability, April 12, 2003, and 52 years old as of the date of the Administrative Law Judge's (ALJ) decision, May 3, 2005. (Tr. at 43.) The plaintiff has a high school education (Tr. at 53), and worked as a fire watcher/truck driver, fire watcher/escort, escort, cashier, and janitor (Tr. at 49, 58). Since the onset date of her disability, the plaintiff has worked for only two weeks as a grocery store cashier. (Tr. at 58.) The plaintiff alleges that she is disabled as result of scoliosis, inflammatory arthritis in her knees and joints, degenerative disc disease in neck and back, carpal tunnel syndrome, impingement syndrome and rotator cuff tear in the right

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

shoulder, severe food and other allergies, diabetes, hypertension, depression, and associated problems.

On June 13, 2003, the plaintiff filed an application for DIB (Tr. at 43-45) alleging she became disabled on April 15, 2003, due to scoliosis, allergies, diabetes and hypertension (Tr. at 43-45, 49). The application was denied initially and on reconsideration. (Tr. at 28-40.) Following a hearing (Tr. at 226-62), the ALJ issued an unfavorable decision on May 3, 2005, finding that the Plaintiff was not disabled because she had the residual functional capacity to perform light work and could perform her past relevant work as an escort (Tr. at 15-21). The Appeals Council denied Plaintiff's request for review (Tr. at 4-6) making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant 's mild degenerative disc disease and scoliosis are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform light work.

7. The claimant's past relevant work as escort did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565).

8. The claimant's medically determinable mild degenerative disc disease and scoliosis do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f)).

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give the opinions of her treating physicians proper weight and consideration; (2) failing to properly evaluate the plaintiff's impairments in the context of the residual functional capacity (RFC) analysis; and (3) failing to properly assess the plaintiff's credibility. The Court will address each alleged error in turn. The Court would state initially that the decision is uncommonly brief in its treatment. Virtually

every objection of the plaintiff to the decision is sustained due to the sheer inability of the Court to determine the basis for the ALJ's respective decisions.

**I.     TREATING PHYSICIAN**

The plaintiff first contends that the ALJ failed to accord the opinion of her treating physician, Dr. James Bland, controlling weight or, in the least, to properly explain the basis for not doing so. The Court easily agrees.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

As is commonly found in the administrative decisions of the Social Security Commission denying benefits, the ALJ concluded that Dr. Bland's opinion was "not supported by his own records or of the overall evidence of record." (Tr. at 18.) The ALJ, however, failed to expressly identify even a single inconsistency that he perceived in the record.

Although some inconsistencies might be implied in the recitation of the medical record, it is not obvious to the Court based on a natural reading of the decision. Tellingly, the defendant concedes that "the ALJ's analysis of Dr. Bland's opinion was brief and inartfully written." (Def. Brief at 14.) In the Court's estimation this concession is an

understatement. The job of the ALJ is not an easy one. But the baseline requirement to explain his conclusion, (*see* SSR 96-2p ("decision must contain specific reasons for the weight given to the treating sources opinion . . . .")), particularly one concerning the plaintiff's primary physician, is neither unreasonable nor onerous. An ALJ's determinations "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). "This duty of explanation is always an important aspect of the administrative charge . . . ." *Id*. (citing *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir.1984)). The Court simply cannot review the decision if no explanation is included.

To the extent the defendant has attempted to defend the ALJ's conclusion that there exists evidence in the record inconsistent with Dr. Bland's opinion, the effort is unavailing. Such argument constitutes an impermissible post-hoc rationalization of the ALJ's decision because the defendant is proffering evidence and rationale not specifically or even implicitly relied upon by the ALJ. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

The case should be remanded to allow the ALJ to clarify and support, if possible, his conclusion that Dr. Bland's opinion was inconsistent with his own notes and the record as a whole.

The plaintiff also complains that the ALJ made various errors in his reliance upon Dr. Douglas Holford's assessment. First, the plaintiff argues that Dr. Holford did not consider all of the plaintiff's impairments but only those related to his neck and shoulders. Second, the plaintiff alleges that the ALJ did not include all of the restrictions indicated by Dr. Holford and provided no explanation for why such restrictions were excluded. Specifically, the

plaintiff claims that the ALJ did not discuss Dr. Holford's conclusion that the plaintiff was limited in her ability to push and pull, and would be limited to only occasional reaching in all directions as a result of her neck and shoulder problems (Tr. at 221-22).

As to the plaintiff's first assignment of error concerning Dr. Holford's opinion, the Court perceives no impropriety in the ALJ's reliance on a medical opinion that considers some but not all of the plaintiff's impairments. Again, the error, if any, exists simply in the ALJ's decision not to fully explain his reasoning and intent in relying on the opinion. *See* SSR 96-2p; *Hammond*, 765 F.2d at 426. Out of an abundance of caution, on remand, the ALJ should explain specifically the weight given to Dr. Holford's opinion and to which impairments the ALJ ascribes Dr. Holford's opinion any relevance.

As to the plaintiff's second assignment of error concerning Dr. Holford's opinion, the defendant astutely responds that the pushing and pulling restriction in Dr. Holford's assessment would not affect Dr. Holford's assessment that the plaintiff could lift and carry 25 pounds occasionally and 10 pounds frequently. By extension, the defendant argues, whatever the extent of the push/pull limitation observed by Dr. Holford, it was not sufficient to alter his opinion of the plaintiff's lifting restriction – the primary restriction considered in regards to an individuals ability to perform "light work." *See* 20 C.F.R § 404.1567(b) (definition of "light work"). While the argument has good appeal in logic, the Court, frankly, has no idea how the push/pull limitation might affect the RFC analysis and whether it is possible for an individual to be able to lift and carry the weight observed by Dr. Holford and yet be precluded from light work as a result of the push/pull limitation observed. *Id*. It is possible – the Court does not know – that the push/pull limitation might be a material inconsistency with the lifting limitation. Simply put, the ALJ, on remand needs to address the push/pull limitation in one respect or another.

## II.    RESIDUAL FUNCTIONAL CAPACITY

The plaintiff next makes several complaints concerning the ALJ's RFC assessment. The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1.

"To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

SSR 96-8p provides that the RFC assessment must be based on all of the relevant evidence, including all allegations of physical and mental limitations or restrictions. *See* SSR 96-8p. When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. *See id*. However, the ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence. *See id.* When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity and no information is found in the record that such a limitation or restriction exists, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity. *See id.*

The plaintiff summarily contends that the ALJ performed no RFC analysis but simply concluded that the plaintiff retained the RFC to perform light work activity. The Court disagrees. Page 5 of the ALJ's decision discusses the plaintiff's testimony concerning her daily activities, medical evidence regarding her limitations, and the opinion of Dr. Holford. (Tr. at 19.) Of course, to the extent the ALJ failed to properly analyze Dr. Bland's opinion, his RFC assessment is necessarily deficient but not for the reason now advanced by the plaintiff – that the ALJ simply failed to make any RFC analysis. The ALJ did make an assessment consistent with his obligations under the regulations. (*See* Tr. at 19.)

The plaintiff also contends that the ALJ failed to consider all of the plaintiff's impairments or that he improperly concluded that certain impairments were not severe. The Court will consider each impairment in turn. As an initial matter, it is telling that the defendant in regards to virtually every impairment about which the plaintiff complains, must concede a deficiency in the ALJ's treatment thereof. As is characteristic of the decision, it is generally thin on, or entirely devoid of, the requisite analysis. The Court, therefore,

remands the case for a consideration of all the impairments, which the plaintiff has identified below, even for those impairments where the ALJ made a colorable attempt to consider them. The ALJ must consider the effect of the impairments taken together. 42 U.S.C. § 423(d)(2)(B). To the extent the ALJ has failed to consider certain impairments, he has prejudiced the entire analysis.

### a.    Knee Impairments

The plaintiff has emphasized certain medical evidence indicating that she suffers severe and limiting knee problems. (*See* Tr. at 93, 196.) The plaintiff contends, however, that the ALJ neither considered the evidence in his decision nor gave any reasons for finding such knee problems non-severe. The defendant does not disagree that the ALJ failed to make any mention or analysis of the alleged impairment but simply argues that the evidence is insufficient to conclude that the knee problems constituted a severe impairment. The ALJ should make this determination in the first instance and is required to do so upon remand of this case.

### b.    Upper Extremity Impairments

The plaintiff also contends that the ALJ failed to assess her carpal tunnel syndrome, torn rotator cuff, and impingement syndrome in her right shoulder. (*See* Tr. 175-77, 184-85, 187-88, 192-98.) The defendant contends that the ALJ did consider the plaintiff's shoulder problems although not the carpal tunnel syndrome specifically. As the defendant concedes, the ALJ made no mention of the plaintiff's carpal tunnel syndrome or impingement syndrome, which should be examined on remand. The Court is generally satisfied that the ALJ made an assessment of other shoulder issues, including the plaintiff's torn rotator cuff. (*See* Tr. at 18-19.) The plaintiff makes no specific objection to this analysis and, therefore, the Court need not recount it in any detail. It is enough that the Court finds, contrary to the plaintiff's contention, that the ALJ considered and discussed the impairment, in accordance with the regulations.

### c.  Hypertension and Diabetes

There is no dispute among the parties that the ALJ considered the plaintiff's hypertension and diabetes and found them to be non-severe impairments. The plaintiff alleges simply that the effect of those non-severe impairments was not considered in combination with the plaintiff's other impairments. To this specific objection, the defendant makes no real response other than to reiterate that there was no basis in the record to conclude that such impairments, on their own, caused any restrictions. As stated, the ALJ cannot have fulfilled his obligations to consider the impairments, taken together, if he has failed to consider any of the impairments individually. *See* 42 U.S.C. § 423(d)(2)(B). Upon remand, and in conjunction with the impairments specifically identified in this order as having not been considered, the ALJ should reconsider whether the plaintiff's hypertension and diabetes has limiting effects.

## III.  PLAINTIFF'S CREDIBILITY

Finally, the plaintiff makes various objections to the ALJ's analysis of the plaintiff's credibility. The plaintiff's objections contest specific conclusions of the ALJ allegedly unsupported by substantial evidence. The Court believes that the problem with ALJ's credibility analysis, however, is more fundamental.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly

consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

Critically and as discussed previously, an ALJ's credibility determination "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond*, 765 F.2d at 426. "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." *Id*. (citations omitted); *see also* 96-7p (requiring that in conjunction with the evaluation of a claimant's subjective complaints the ALJ must give "specific reasons" for a credibility finding).

The ALJ failed to perform the analysis as prescribed. Specifically, the ALJ nowhere has assessed whether the plaintiff has impairments, which objectively speaking, could reasonably produce the kind of pain about which the plaintiff complains. *See Craig v*, 76 F.3d at 591. As stated, such analysis "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Only after this initial inquiry is made can "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work" be evaluated. *Id.* at 595. It is beyond dispute that the ALJ failed to perform the initial component of this analysis. (Tr. 19.) Instead, he proceeded "directly to considering the credibility of [the] subjective allegations of pain," *Craig v*, 76 F.3d at 596, by emphasizing the lack of interference with household

11

chores and emergency room and hospital visits (Tr. at 19). Although the ALJ states that there is a "paucity of objective findings of significant abnormality and the lack of substantiation of the asserted degree of impairment by the clinical findings," *id*., the determination is simply too conclusory to satisfy the strictures of the first part of the credibility inquiry. The decision must "refer specifically to the evidence informing the ALJ's conclusion." *Hammond*, 765 F.2d at 426. Otherwise, "remand is warranted." *Craig*, 76 F.3d at 596.

Accordingly, the ALJ upon remand should perform the appropriate credibility analysis in accordance with *Craig*.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

January 31, 2007
Greenville, South Carolina